POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 24-24267-F-B-7 |
| | ) |
| **RIKI TROWE,** | ) Docket Control No. DNL-14 |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |

### **RULING ON TRUSTEE'S MOTION FOR BAD FAITH DETERMINATION**

_____

J. Russell Cunningham, DESMOND, MANNING, LIVAICH & CUNNINGHAM for Nikki B. Farris, Chapter 7 Trustee, Movant.

Omero Banuelos, for RIKI TROWE, Debtor.

Jeffrey W. Shields, for Colutions, LLC, Creditor.

_____

RENÉ LASTRETO II, Bankruptcy Judge:

### **INTRODUCTION**

The Chapter 13 bargain is in return for committing to a three to five year payment plan, debtors who elect Chapter 13 can keep most of their property and at the end of the plan, receive a discharge.[1]  A further benefit is if circumstances prevent debtors from maintaining plan payments, they have the option of converting to Chapter 7. § 1307(a).  If they convert in good

---

[1] Unless otherwise indicated, references to chapters or code sections shall be references to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. References to "Civ. Rule" shall be to the Federal Rules of Civil Procedure. References to "Rule" shall be to the Federal Rules of Bankruptcy Procedure.

faith, the Chapter 7 estate is limited to what the debtor still possesses and controls of the property of the estate when the petition was filed. § 348(f)(1). The debtor avoids the "penalty" of turning over to a Chapter 7 trustee the property acquired after filing but before conversion.

Contrast that with what occurs if the debtor converts in bad faith. Under § 348(f)(2), if there is a bad faith conversion, property of the estate consists of property existing on the date of conversion.

Here, we examine whether a debtor converted in bad faith and suffers the penalty. Applying controlling circuit precedent, the court finds the conversion was in bad faith and thus the property of the estate in this case consists of property of the estate on the date of the conversion.[2]

**BACKGROUND**

To help the reader, here is a list of individuals and entities that will be discussed.

Riki Trowe ("Debtor" or "Trowe") the debtor here. Debtor has a tangly list of affiliates.

RJT Consulting, LLC ("RJT"). Debtor owns 100% of the interest in RJT. Docs. #195, #197.

Event Horizon Group, LLC ("EHG"). Debtor owns a 33.3% interest in EHG. Docs. #195, #197.

Ventura Seed Company, Inc. a corporation wholly owned by Debtor.

---

[2] This case was originally assigned to the Honorable Fredrick E. Clement. It was later assigned to the undersigned due to Judge Clement's retirement.

Four2Nada, Inc.  Four2Nada is wholly owned by the Debtor. There is some evidence that there exists both a California and Oregon corporation by that name.  Doc. #195.

Ventura Seed Company, LLC ("SeedCo").  This affiliate is partially owned by and is a judgment creditor of the Debtor.

Omero Banuelos, Esq.  Debtor's counsel in this bankruptcy case as well as the counsel for the Debtor in numerous other litigations.

A.  Pre-petition events.

In 2020, creditor Colutions, LLC ("Colutions") obtained an arbitration award against SeedCo for over $840,000.00 plus interest for SeedCo's breach of contract. Doc. #197.  The arbitration award was confirmed by the United States District Court for the District of Colorado. *Id.*

As the British say, asset "Jiggery-pokery" ensued.  Alleged transfers of SeedCo assets led to a second Federal case in 2022 filed in the District Court for the Central District of California.  Colutions sued Debtor and some of his affiliated companies alleging that Debtor and others transferred monies from SeedCo to SeedCo's insiders or Debtor affiliated companies including Four2Nada (both its California and Oregon versions). Doc. #197.  This litigation also alleged the transfers left SeedCo insolvent and unable to pay the judgment. *Id.*

Colutions' theories included recovery of avoidable transfers, conspiracy, breach of fiduciary duty, and unjust enrichment. Doc. #197.  Injunctive relief was also sought. *Id.*

///

3

During 2023 and 2024 Debtor's affiliates filed three separate bankruptcy cases in this District. Doc. #195:

| Affiliate | Case # | Filed | Closed |
|---|---|---|---|
| Four2Nada, Inc. | 23-21498-C-7 | 05/08/23 | 06/16/23 |
| Four2Nada, Inc. | 23-22267-B-7 | 07/10/23 | 01/12/24 |
| Ventura Seed Company, Inc. | 24-21327-C-7 | 04/01/24 | 05/09/24 |

These filings were used to stifle the Debtor's scheduled depositions. *Id.*

The Debtor and his affiliates stonewalled discovery in the Central District of California fraudulent transfer case leading to an order of that Court by Magistrate Judge Standish on July 23, 2024. Doc. #197. Judge Standish sanctioned the Debtor $17,192.00 in attorneys' fees payable in full in 60 days and an initial $5,000.00 payment due August 13, 2024. *Id.* Payments were not made even though the Debtor had available funds to do so. Doc. #195.[3] Judge Standish summed up the situation:

> Frankly, the Court would not have much of an issue finding bad faith on the part of Trowe here – bad faith that can, in proper circumstances, permit the Court to issue terminating sanctions (or, here, recommend such sanctions to the District Judge) without starting with a lesser sanction. His blatant disregard for both his discovery obligations under the Federal Rules and his apparent disdain for authority in disregarding directives of the Court support such a finding. But given that this is a first sanction in this case, the Court feels obligated to award only monetary sanctions; only against Trowe…

Doc. #197.

///

---

[3] Later, the Chapter 7 Trustee discovered thirteen transfers during the 60 day period to Debtor's relatives totaling $34,260.00 from a Debtor controlled account.

B. <u>Post-Petition, Pre-Conversion Events</u>.

A few days after the expiration of the deadline to pay the discovery sanctions, on September 24, 2024, Trowe filed this case as a Chapter 13. Doc. #1.

Trowe's problems were just beginning.

Trowe's original schedules and Statement of Financial Affairs skipped mentioning assets. The omissions included a 100% interest in RJT. Doc. #195. Also missing was a 33.5% interest in EHG.[4]

Debts were also withheld from the original schedules. Trowe had judgments against him since October 2020 in favor of Colutions in the amount of over $842,000.00. Doc. #195. There was also a judgment for Trowe's affiliate, SeedCo, for $5,698,000.00. *Id.*

Transfers were also withheld from the original Statement of Financial Affairs. Forty-three transfers totaling over $236,000.00 made during the Central District litigation were omitted. 112 transfers totaling $645,000.00 occurred after that litigation started. Doc. #195.

The Chapter 13 Plan proposed by Trowe contained misrepresentations. The plan stated in paragraph 3.14 that general unsecured claims only totaled $16,000.00. Doc. #195.

Neither the Chapter 13 Trustee nor the judgment creditors were hoodwinked.

In mid-November 2024 both the Chapter 13 Trustee and judgment creditor objected to plan confirmation disputing Trowe's

---

[4] This is particularly troubling in this case since Mr. Banuelos directly received payments from RJT's bank account. Doc. #195.

eligibility for Chapter 13 and the feasibility of the Plan. Doc. #145.  The Chapter 13 Trustee also raised Trowe's failure to make the first Plan payment, attend the scheduled meeting of creditors, and provide the trustee with requested business documents. Doc. #195.

On December 5, 2024, acknowledging the imprudence of continuing the Chapter 13 case, Trowe, through his counsel, requested conversion of the case to Chapter 7. Doc. #195.  The conversion request included a statement that Trowe was ineligible for Chapter 13 relief. *Id.*  The case was converted on December 6, 2024, a little over two months from the date of filing.

C.   Pertinent Post-Conversion Events.

Nikki Farris, movant here, was appointed Chapter 7 trustee ("Trustee"). Docket generally.

Trustee hired counsel and started vigorous discovery. Docket generally.

Trustee discovered Trowe's interest in RJT by reviewing Trowe's response to a records request.  Among the produced documents was a balance sheet for RJT showing cash of $12,851.00 in a Chase bank account. [5]  But the Trustee learned from Chase that the actual balance at the time of the balance sheet exceeded $179,000.00. Doc. #195.

The Debtor filed "conversion schedules" under Rule 1019(e)(2) on February 24, 2025. Doc. #56.  The schedules then listed RJT but undervalued the interest.  The later schedules ///

---

[5] This account is referred to in the pleadings as "Chase Account #9819."

6

listed Four2Nada and listed the Colutions debt for $1,000,000.00 and SeedCo's debt of $5,600,000.00 as "disputed." *Id.*

About a month later, the Statement of Financial Affairs was updated to list the Debtor's interest in EHG. Doc. #56.

The Trustee started three adversary proceedings.[6]

One adversary proceeding was against RJT to set aside certain transfers through EHG deposits into the Chase #9819 account. AP #25-2131. The claim is for $1,363,000.00. A default judgment has been entered against RJT.

A second adversary proceeding is against Susan Marron, the former spouse of the Debtor and other Trowe family members. AP #25-2135. That adversary proceeding is for avoidance of fraudulent transfers, turnover, and declaratory relief as to various assets including certain real properties.

A third adversary proceeding is against Trowe for denial of discharge under §§ 727(a)(2)(A), (B), (4), (6)(A), (a)(7). AP #25-2136.

The Trustee filed a motion to compel the Debtor to turnover certain assets. The motion was granted July 30, 2025. Doc. #110. Those assets were the 100% interest in RJT, 33% interest in EHG, turn over control of the of RJT bank accounts at Chase, a 2022 Audi Q5, a 2023 Land Rover, and premium seating Los Angeles Dodgers' season tickets.[7]

---

[6] Both Colutions and SeedCo each filed their adversary proceedings seeking non dischargeability for fraud, willful and malicious injury, and embezzlement. The claims also included an objection to discharge because of Debtor's alleged concealed records, false oaths, and unsatisfactory explanations for deficiency of assets.

[7] Three months later the court issued an order for the Debtor to appear at a debtor's examination. Doc. #210. The examination is to relate to the turnover of the assets. Some of the assets have been turned over. See Civ. R. 69(a)(Rule 7069) applicable to contested matters under Rule 9014(c)(1).

On October 3, 2025, the Debtor filed a motion asking the court to determine the characterization of certain "earnings" of the Debtor as post-petition earnings and unavailable to the Trustee. Docs. ##176-181.  The Trustee opposed and requested an evidentiary hearing. Docs. ##188-191; ##208-212.  The court denied the motion a month later holding that an adversary proceeding was necessary. Docs. ##223-224.

On October 20, 2025, this motion was filed by the Trustee. Docs. ##193-196.  The first hearing on this motion was scheduled for November 17, 2025.  However, the parties have continued the motion many times by mutual agreement.

At one of the continued hearings, Judge Clement continued the matter to the undersigned's March 17, 2026, calendar. Doc. #279.  Judge Clement's order stated that that Banuelos could augment the record on this motion no later than February 16, 2026.  Trustee's counsel could reply no later than February 23, 2026. *Id.*  Both parties have waived discovery and aside from those two augmentations, Judge Clement ordered the record closed. *Id.*  The order states "the matter will be decided based on written submissions." *Id.* and Doc. #281.

Trowe and the Trustee attempted to settle the objections to discharge.  Those efforts culminated in a motion brought by the Trustee for the Debtor to waive the discharge. Docs. ##228-232. On February 2, 2026, Judge Clement denied the motion because the Debtor's declaration did not sufficiently show the Debtor has "conscious and informed judgment" of the consequences of waiving the discharge. Docs. #277, 284.

///

8

The last hearing on this motion was on March 17, 2026.  This motion has one request – a finding that the case was converted from Chapter 13 to Chapter 7 in bad faith.  If that finding is made, the property of the estate would consist of both the property of the estate as it existed on the date this Chapter 13 was filed, September 24, 2024, plus the property of the estate as of the date of conversion, December 6, 2024.  The Trustee contends that if property of the estate is limited to what was in existence on the original filing date, approximately $329,000.00 has yet to be collected by the Chapter 7 trustee.  If the court finds bad faith, the Trustee claims that over $764,000.00 is property that the Trustee must administer.  The court is not asked to characterize any property in this motion and the court will not do so.[8]

## **THE PARTIES CONTENTIONS**

The Trustee argues that applying a "totality of circumstances" test as required in the Ninth Circuit will show that this case was converted to Chapter 7 in bad faith.  The Trustee further argues that the Debtor has the burden of proof to establish good faith.

The Trustee points to numerous omissions and falsehoods in the schedules, that affiliates filed three previous petitions to frustrate collection and avoid paying sanctions ordered by the District Court, and that the Debtor concealed funds until discovered by the Trustee.

---

[8] An adversary proceeding is necessary.  See Rule 7001(b).  The parties have stated through counsel that they are working on a resolution of the dollar amounts involved under either scenario.

The Debtor argues that he did not oppose conversion since he filed his own request and that simply agreeing with the Chapter 13 trustee that he was ineligible to file a Chapter 13 does not demonstrate bad faith. He also points to his lack of opposition to the turnover of his interest in EHG, that he turned over the vehicles and Dodger tickets to the Trustee. He stresses that he purchased the vehicles with post-petition earnings.

Debtor also maintains that he is entitled to all post-petition earnings as all the earnings were from his own personal services. He also explains that he paid his former spouse a lease payment of $8,500.00 and $1,000.00 for the education of one of his children. He also reminds that the net value of any post-petition earnings should be considered since the Debtor incurred expenses to generate the earnings through RJT.

The Trustee's reply posits that the Debtor did not explain the three affiliate bankruptcy cases that were filed to avoid collection or explain the failure to pay sanctions when he had access to the funds to do so. The Trustee also stresses that the Chapter 13 was filed when the Debtor was obviously ineligible and much was omitted from the original schedules. A cogent explanation for the concealment is also lacking according to the Trustee. The Trustee also raises the Debtor's untimely compliance with the turnover order and providing the necessary bank account records.

The Trustee did raise in the reply that after reviewing other bank records, gross revenue for Four2Nada between January 1, 2021, and July 10, 2023, was over $721,000.00. Doc. #221. That there were omitted transfers aggregating over $132,000.00 to

10

insiders of Four2Nada, Inc. within two years of Four2Nada's petition date. *Id.*[9]

## **JURISDICTION**

This court's jurisdiction is founded on 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a).  This is a matter this court can adjudicate and finally determine under 28 U.S.C. § 157(b)(2)(A).

## **DISCUSSION**

I.   Bad faith conversion is determined by a totality of the circumstances.

A Chapter 13 debtor may convert a case to Chapter 7 at any time. § 1307(a).  Absent a bad faith conversion, § 348(f)(1) limits a converted Chapter 7 estate to property belonging to the debtor "as of the date" the original Chapter 13 petition was filed.  *Harris v. Viegelahn*, 575 U.S. 510, 516 (2015).

On the other hand, § 348(f)(2) provides:

> If the debtor converts a case under Chapter 13 of this title to a case under another Chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f)(2).  The question then becomes what is bad faith?  The question posed in *Harris* was whether post-petition wages not yet distributed by the Chapter 13 trustee had to be

---

[9] Ordinarily, new evidence raised in the reply would be disregarded by the court.  However, Judge Clement gave an opportunity to Trowe and his counsel to augment the record before it was closed and this court held the final hearing on the matter.  The reply declaration setting forth these facts was filed in this matter on November 5, 2025. Doc. #221.  Thus, Trowe and his counsel had over three months to augment the record.

returned to the debtor upon conversion.  *Harris*, 575 U.S. at 513, 518.  The Court in *Harris* suggested a broad category of bad faith:

> If a debtor converts in bad faith – for example by concealing assets in unfair manipulation of the bankruptcy system – the converted Chapter 7 estate "consists of property of the Chapter 13 estate *as of the date of conversion*. § 348(f)(2) thus penalizes bad faith debtors by making their post-petition wages available for liquidation and distribution to creditors. 575 U.S. at 518, emphasis in original.

The totality of circumstances "test" has been well established in the Ninth Circuit.  See *Farrar v. Sandoval (In re Sandoval)*, BAP No. EC-04-1549-MaSP; 2005 Bankr. LEXIS 3383, *18 (BAP 9th Cir. Aug. 3, 2005) citing *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (BAP 9th Cir. 2002) citing *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1391 (9th Cir. 1982).  Under the test, a bankruptcy court generally considers the following factors:

> (1) whether the debtor misrepresented facts in his or his petition or plan, unfairly manipulated the bankruptcy code or otherwise filed the Chapter 13 petition or plan in an inequitable manner;
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether the debtor's only purpose in filing for Chapter 13 protection is to defeat state court litigation; and
>
> (4) whether egregious behavior is present.

*Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999).

The existence of bad faith is a factual determination. *Id.* at 1222-23; *In re Siegfried*, 219 B.R. 581, 585 (Bankr. D. Colo. 1998).  See also *Goeb*, 675 F.2d at 1390.

12

These *Leavitt* factors have been termed "simply tools that the bankruptcy court employs in considering the totality of circumstances." *Kahn v. Barton (In re Kahn)*, 523 B.R. 175, 185 (BAP 9th Cir. 2014).

Once the Trustee has put bad faith at issue, under § 348(f)(2) the Debtor here has the burden of proving that he converted the Chapter 13 case to Chapter 7 in good faith. *Sandoval*, at *18.

Applying these "tools" to the facts at issue establishes the conversion here was in bad faith.

II.  Totality of Circumstances Evidences a Bad Faith Conversion.

A. Misrepresentation of Facts in Schedules and Plan and Unfairly Manipulating the Bankruptcy Code.

Misrepresentation and unfair manipulation of the Code has been found when a debtor's dishonesty pervades the bankruptcy proceeding, such as when a debtor fails to fully disclose assets and financial dealings and fails to correct disclosure or offer an explanation for his conduct. *Pancic v. Lokan (In re Lokan)*, BAP No. OR-22-1249-CLB; 2023 Bankr. LEXIS 1556 (BAP 9th Cir. June 14, 2023) citing *Leavitt*, 171 F.3d at 1225; *In re Tomlin*, 105 F.3d 933, 941 (4th Cir. 1997).  Some manipulation or abuse of the Bankruptcy Code for unfair or inequitable purposes must be found in debtor's conduct in the Chapter 13 case or in the conversion. *Sandoval*, at *23.

Trowe misrepresented many facts here especially in his original bankruptcy schedules.  The omissions included the

13

interest in RJT, EHG and failure to mention the substantial judgments outstanding at the time of the filing including the judgment in excess of $842,000.00 in favor of Colutions and the judgment in excess of $5,600,000.00 in connection with SeedCo.

Transfers were omitted from the Statement of Financial Affairs including 43 transfers adding up to $236,000.00 and 112 transfers totaling $645,000.00.  The Chapter 13 plan Trowe proposed falsely stated that the general unsecured claims were only $16,000.00.[10]  Manipulation of the Bankruptcy Code is also evidenced by the inexplicable filing of a Chapter 13 case when the debtor was certainly ineligible.

Debtor's arguments that he simply agreed with the Trustee on the eligibility issue and filed his own conversion motion and his "cooperation" in eventually turning over certain assets does not change the result.  No explanation has been given why the initial schedules contained so many omissions let alone the Chapter 13 plan containing a clear misrepresentation.

The timing of the filing just after the expiration of the time to pay the discovery sanctions when coupled with the other problems indicates a manipulation of the Bankruptcy Code.

It is also not lost on the court that it was not until after the Trustee began discovery that Trowe's interest in RJT and other entities was revealed.  The documentation provided to the Trustee also contained a substantial understatement as to the amount on deposit in the Chase bank account.

///

---

[10] These omissions are troubling in and of themselves but significantly more disquieting because Trowe's counsel, Mr. Banuelos, represented Trowe and his affiliates in litigation pending at the time the bankruptcy was filed.

True enough, the Debtor did file "conversion schedules" over two and one-half months after the conversion and finally listed the interests in RJT and Four2Nada. But that was too little too late. It was not until a month later that the Debtor updated his Statement of Financial Affairs to list EHG.

Debtor urges that simply agreeing with the Trustee is not evidence of bad faith. But that is of no assistance. The finding of bad faith does not require fraudulent intent by the debtor, nor is evidence required of the debtor's ill will directed to creditors, or that the "debtor was affirmatively attempting to violate the law – malfeasance is not a prerequisite to bad faith." *In re Lokan*, quoting, in part, *In re Leavitt*, 171 F.3d 1224-25. So even if the Debtor could establish that his intent was not fraudulent, it is of no consequence since numerous other factors evidence bad faith and manipulation of the Bankruptcy Code.[11]

The court therefore finds that the Debtor misrepresented facts in the petition, schedules, Statement of Financial Affairs and Chapter 13 plan. The court finds that the Debtor unfairly manipulated the Bankruptcy Code and otherwise filed the Chapter 13 Petition and Plan in an inequitable manner.

B.    The Previous Filings and Dismissals Evidence Bad Faith.

The Debtor, through Mr. Banuelos, delayed prosecution of the District Court fraudulent transfer matter by filing no asset Chapter 7 cases on behalf of Debtor's affiliates in this District for Four2Nada, Inc. in May and then again in July 2023 and one

---

[11] The Supreme Court gave examples of bad faith such as "concealing assets in unfair manipulation of the bankruptcy system." *Harris*, 575 U.S. at 518.

for Ventura Seed Company, Inc. (different from SeedCo) in April 2024. These filings were used to frustrate discovery in the fraudulent transfer case pending in the District Court for the Central District of California. One was dismissed for failure to file documents. The other two each resulted in no distribution to unsecured creditors. Mr. Banuelos was counsel in all three cases.

The court finds that the history of the filings of bankruptcy by the Debtor's affiliates evidences the Debtor's bad faith in converting this case to Chapter 7 in bad faith.

C.  The Purpose of the Filing was to Defeat Pending Litigation Evidencing Bad Faith.

As indicated, substantial judgments had already been entered against the Debtor and the Debtor's affiliates prior to the filing of the original Chapter 13 case. The fraudulent transfer litigation pending in the Central District of California was pending at the time of the filing of this bankruptcy case.

The Magistrate Judge of the District Court had entered a discovery sanction order; the Debtor did not comply.

The filing of the bankruptcies by the Debtor's affiliates in 2023 and 2024 coincided with discovery events in that litigation.

The court finds that one motive for filing this bankruptcy case was the defeat of pending litigation which evidences bad faith.

///

///

///

16

D.   The Egregious Behavior of the Debtor in this Case Evidences Bad Faith.

Egregious conduct has been found where Debtor's conduct demonstrates a blatant disregard for bankruptcy process, such as refusing to fully and accurately disclose financial affairs, concealing information from the court, violating injunctions, and obstructing Trustee's duties.  *Leavitt*, 171 F.3d at 1225; *In re Tomlin*, 105 F.3d at 936, 937.

"If a debtor is unable to complete a plan due to a change in circumstances or financial hardship, bad faith should not be found."  *Sandoval*, at *16.  "Further, simply taking advantage of the statute's provisions excluding property acquired during the Chapter 13 case from the Chapter 7 estate after conversion is not bad faith." *Id.*  Unfortunately, that is not the situation here.

The Debtor has provided no evidence to suggest a change in circumstances or financial hardship that required the conversion to Chapter 7.  What did require the conversion was the Debtor's clear ineligibility to remain in Chapter 13.

Further, the Debtor did not attend the meeting of creditors, nor did the Debtor make any plan payment while the case was pending as a Chapter 13.  The usual circumstances requiring a conversion do not usually amount to bad faith.  But here, coupled with the misrepresentations, asset transfers, and the debt omissions in the schedules, and the timing of Debtor's "cooperation" with the Trustee all point to egregious behavior and a finding of bad faith.

///

///

17

It is the Debtor's burden to prove that the Chapter 13 petition was filed in good faith. *Leavitt*. The Debtor has not met that burden.

The Debtor has not explained why the Chapter 13 was filed initially. The Debtor has not explained why the original schedules omitted so much critical information. The Debtor has not explained why it was not until after the Chapter 7 trustee commenced discovery and pursued other litigation when the Debtor provided some information to the Trustee. The Debtor has not explained misrepresentations as to the balance in the Chase account. The Debtor has not explained why a substantial amount of the funds the Trustee has discovered have not been turned over.

The Debtor's only argument is to contest the characterization of some of the assets acquired between the petition filing date and the conversion. That does not explain the other acts and omissions. Further, even when given the opportunity, the Debtor does not explain the Trustee's discovery of monies held by affiliate, Four2Nada, when the Trustee revealed the findings.

The court finds that under the totality of the circumstances here, the Debtor's egregious behavior is present.

## CONCLUSION

The Debtor has not met his burden of proof to establish the good faith of the conversion. Application of the Ninth Circuit's "totality of the circumstances" test as informed by the *Leavitt* factors establishes a preponderance of the evidence that the

18

conversion of the Chapter 13 case to Chapter 7 was in bad faith. A separate will issue.[12]

Dated: Mar 31, 2026

By the Court

René Lastreto II, Judge
United States Bankruptcy Court

---

[12] The foregoing are the court's findings of fact and conclusions of law under Civ. R. 52 (Rule 7052) as incorporated under Rule 9014(c). Any finding of fact deemed a conclusion of law is adopted as such. Any conclusion of law deemed a finding of fact is adopted as such.

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___ , via the U.S. mail.

Nikki B. Farris
2607 Forest Ave #120
Chico, CA 95928

J. Russell Cunningham
1830 15th St
Sacramento, CA 95811

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Omero Banuelos
Omero Banuelos Attorney At Law
415 W. Foothill Blvd., Suite 202
Claremont CA 91711

Jeffrey W. Shields
Shields Law Offices
1920 Main Street, Ste. 980
Irvine, CA 92614